# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

SALESIA L. RUSH,

          Plaintiff,

    v.

STATE OF ALASKA,
DEPARTMENT OF HEALTH AND
SOCIAL SERVICES,

          Defendant.

Case No. 3:16-cv-00233-SLG

## ORDER REGARDING MOTION TO SUPPLEMENT
## AND MOTION FOR SUMMARY JUDGMENT

Before the Court is Plaintiff Salesia Rush's Motion to Supplement the Record at Docket 62. Defendant State of Alaska, Department of Health and Social Services ("DHSS") opposed this motion at Docket 63, to which Ms. Rush replied at Docket 65. Oral argument was not requested on this motion and was not necessary to the Court's determination. Also pending before the Court is DHSS's Motion for Summary Judgment at Docket 45. Ms. Rush opposed this motion at Docket 51, to which DHSS replied at Docket 55. Oral argument on the summary judgment motion was held on November 2, 2018.

## I. BACKGROUND[1]

On October 5, 2016, Ms. Rush initiated this action against her former employer, DHSS and several DHSS employees, against whom she alleged several

---

[1] These facts are presented in the light most favorable to the nonmoving party for purposes of

claims, including employment discrimination.[2]  On March 30, 2017, Ms. Rush filed

the First Amended Complaint ("FAC"), after which some of her claims and all of

the individual defendants were dismissed with prejudice.[3]  Ms. Rush's three

remaining claims against DHSS include race discrimination in the form of disparate

treatment, disparate impact, and retaliation pursuant to Title VII of the Civil Rights

Act of 1964 ("Title VII").[4]

## A. Events Prior to March 2012

Ms. Rush is an African American woman who first started working for DHSS

in 2003.  On November 24, 2008, she was promoted to a Criminal Justice

Technician I ("CJT 1") in the Background Check Program unit ("BCU").[5]  On

September 1, 2010, Tracey Marshall, an African American woman and Program

Coordinator I, became Ms. Rush's direct supervisor.[6]  Renee Cote and Darlene

Hornbeak are Caucasian women who also worked in the BCU with Ms. Rush.[7]

Patrice Frank, an African American woman, and Mary Ellen Thomas, a Hispanic

---

the summary judgment motion.

[2] Docket 1 (Compl.) at 1, 17–20.

[3] Docket 5 (FAC); Docket 8 (Screening Order) at 12.

[4] Docket 5 at 20–24, ¶¶ 156–68; Docket 8 at 13; *see* 42 U.S.C. § 2000e *et seq.*

[5] Docket 45-38 (12/30/16 ASCHR Determination) at 4.

[6] Docket 16 (Answer) at 2–3, ¶ 8; Docket 37-3 (Employee List) at 29.

[7] Docket 37-3 at 29–30; Docket 5 at 11, ¶ 68; Docket 53 (S. Rush Affidavit) at 9, ¶ 23.

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 2 of 36

woman, also worked in the BCU with Ms. Rush as Criminal Justice Technician IIs.[8]

Jane Urbanovsky, a Caucasian woman, is the Chief of Certification and Licensing

and oversees the BCU.[9]  Suzan Hartlieb is the Alaska State Employees

Association ("ASEA") Business Agent assigned by the union to represent

employees at DHSS.[10]

On December 2, 2009, Ms. Rush filed with the Alaska State Commission for

Human Rights ("ASCHR") and cross-filed with the Equal Employment Opportunity

Commission ("EEOC") a charge alleging race discrimination, retaliation, and a

hostile working environment ("the 2009 Charge").[11]  On March 3, 2011, ASCHR

determined that Ms. Rush's "allegations [were] not supported by substantial

evidence" and closed the ASCHR 2009 Charge.[12]  On April 13, 2011, the EEOC

adopted ASCHR's findings and closed the EEOC 2009 Charge.  The EEOC issued

Ms. Rush a notice that authorized her the right to sue in federal court within 90

---

[8] Docket 37-3 at 29.

[9] Docket 45-2 (6/26/12 DHSS Position Statement) at 2; Docket 37-3 at 29–30.

[10] Docket 5 at 16, ¶ 128; Docket 16 at 14, ¶ 128.

[11] Docket 45-5 (ASCHR Compl. No. J-09-271) at 1–2; Docket 45-41 (12/15/2009 EEOC Notice, Charge No. 38A-2010-00044) at 1.

[12] Docket 45-7 (3/3/2011 ASCHR Determination) at 3.

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 3 of 36

days of receipt of the notice, on or about July 12, 2011.[13] Ms. Rush did not exercise her right to sue before the time for filing expired.

On September 7, 2010, DHSS suspended Ms. Rush without pay for ten days for engaging in "inappropriate communication in the workplace," among other violations.[14] Specifically, DHSS determined that Ms. Rush had sent and received numerous emails to and from Ms. Cote and Ms. Hornbeak that "contained snarky remarks" and included "some off color remarks about [ ] supervisors and coworkers."[15] On the same day and because of their involvement sending and receiving these emails, Ms. Cote was suspended without pay for five days, and Ms. Hornbeak was suspended without pay for one day.[16] On March 21, 2011, Ms. Rush filed with the ASCHR and cross-filed with the EEOC a second charge alleging race discrimination based on the September 7, 2010 suspension and retaliation based on the filing of the 2009 Charge ("the 2011 Charge").[17] On April

---

[13] Docket 45-41 (4/13/2011 EEOC Dismissal, Charge No. 38A-2010-00044) at 5.

[14] Docket 45-2 (6/26/12 DHSS Position Statement, Ex. C., 9/7/10 Letter of Suspension) at 23. DHSS asserts that it also disciplined Ms. Rush for violating the State of Alaska Technology Policy, demonstrating inappropriate use of State time, and failing to follow the proper chain of command. Docket 45-2 at 23.

[15] Docket 51 (Opp'n) at 8. With regard to the emails, Ms. Rush "believe[s] that [she] had a right to write what [she] wrote." Docket 51 at 15. DHSS determined that the group emails were inappropriate because they discussed offensive and threatening content such as: calling coworkers and supervisors derogatory names, homophobic content, threatening coworkers, and references to drug use and use of sex toys. *See* Dockets 48-1 to 48-18 (Email excerpts).

[16] Docket 48-6 (9/7/10 Letter of Suspension for Ms. Cote) at 3–4; Docket 48-6 (9/7/10 Letter of Suspension for Ms. Hornbeak) at 1–2; *see* Docket 51-7 (Req. for Admis. No. 33) at 1–2; Docket 45-32 (DHSS 8/12/11 Position Statement) at 3.

[17] Docket 45-30 (ASCHR Compl. No. J-11-080); Docket 45-31 (4/7/2011 EEOC Notice, Charge

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 4 of 36

19, 2011, ASCHR closed the 2011 Charge as untimely because it was not filed within ASCHR's 180-day filing period.[18]   On January 17, 2012, the EEOC dismissed the 2011 Charge, stating that after investigation, it was "unable to conclude that the information obtained establishes violations of the statutes."[19] The EEOC issued Ms. Rush a notice authorizing her to bring suit in federal court within 90 days of receipt, on or about April 16, 2012.[20]   Ms. Rush did not file suit regarding the 2011 Charge allegations before the time for filing had expired.

### B.    The Credit Card Incident

On March 30, 2012, Ms. Rush overheard Ms. Marshall on a speaker phone with a BCU client.[21] The client was telling Ms. Marshall that Ms. Rush had tried to get the client's credit card information.[22]   Ms. Rush had not asked the client for credit card information; she had not talked to any clients on the phone that day.[23] Ms. Thomas had heard Ms. Frank claim her name was Salesia on the phone before

---

No. 38A-2010-00044) at 3.

[18] Docket 45-31 (4/19/2011 ASCHR Closing Order) at 1.

[19] Docket 45-34 (1/17/2012 EEOC Dismissal, Charge No. 38A-2011-00146) at 1.

[20] Docket 45-34 at 1.

[21] Docket 53 at 4–5, ¶ 15.

[22] Docket 53 at 4–5, ¶ 15 ("Ms. Marshall also explained that I do not go by the name of Salesia, that I go by 'Lisa.' The client said 'I did not talk to Lisa.  I talked to Salesia.  She said her name six times to make sure I had it right.").

[23] Docket 53 at 5, ¶ 15.

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 5 of 36

transferring the call to Ms. Thomas.[24]  On the same day, Ms. Marshall discussed the matter with Ms. Rush and Ms. Frank together.[25]  Ms. Frank admitted that she had obtained credit card information from the client that day but denied that she had identified herself as Salesia.[26]  At that time, only Ms. Marshall and Ms. Frank were permitted to take credit card information from clients on the phone.[27]  Ms. Marshall "agree[d] to contact the client and clear [Ms. Rush's] name."[28]

On April 2, 2012, Ms. Marshall, Ms. Frank and Ms. Rush met together to discuss the relationship between Ms. Frank and Ms. Rush.[29]  During that meeting Ms. Rush said that because of the credit card incident, she believed Ms. Frank was deceitful.[30]  Ms. Marshall insisted that Ms. Rush should be Ms. Frank's friend.[31]  After Ms. Frank left the meeting, Ms. Marshall and Ms. Rush continued the discussion; Ms. Rush told Ms. Marshall that Ms. Frank is "going to have to learn to adjust to this office."[32]  Both Ms. Marshall and Ms. Rush raised their voices loud

---

[24] Docket 53 at 5, ¶ 15; Docket 51-14 (DHSS Response to Interrogatory No. 8) at 1.

[25] Docket 5 at 18–19, ¶ 141; Docket 16 at 16, ¶ 141; Docket 53 at 5, ¶ 15.

[26] Docket 16 at 16, ¶ 141; Docket 45 (MSJ) at 16.

[27] Docket 53 at 5, ¶ 15.

[28] Docket 53 at 5, ¶ 15.

[29] Docket 5 at 19, ¶ 142; Docket 16 at 16, ¶ 142; Docket 53 at 6, ¶ 17.

[30] Docket 45-2 at 5; Docket 53 at 6–7, ¶¶ 17, 18; Docket 48-21 (S. Rush Dep.) at 13:12–17.

[31] Docket 53 at 6, ¶ 17.

[32] Docket 48-21 at 12:19–13:11.

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 6 of 36

enough that people outside of the office could hear them.[33] Ms. Navarez came into the meeting and asked Ms. Marshall if she had called the client to clear Ms. Rush's name; Ms. Marshall responded that she had not.[34]

## C. Investigative Interview and Resignation

On April 10, 2012, DHSS conducted an investigative interview with Ms. Rush to discuss her "inappropriate communication in the workplace."[35] Ms. Rush, Ms. Marshall, Ms. Hartlieb, Ms. Urbanovsky and Anne Knight participated in this meeting.[36] When Ms. Knight, a HR Specialist, "just returned" from this meeting, she emailed the following:

> Jane [Urbanovsky] and Tracey [Marshall] want to dismiss [Ms. Rush] and Suzan [Hartlieb] wants to ask the employee if she wants to resign. The benefit for the State – for allowing [Ms. Rush] to resign is that I am not sure we have a super great case and she won't be able to grieve the dismissal. Jane is drafting up their justifications for dismissal and hope [*sic*] to have them to me later today.[37]

The parties disagree, but Ms. Rush asserts that after the meeting, "Ms. Hartlieb told [Ms. Rush] that [she] could either resign or [she] would be fired at the door the

---

[33] Docket 53 at 6, ¶ 17.

[34] Docket 53 at 6, ¶ 17.

[35] Docket 16 at 16, ¶ 143; Docket 45-35 (4/9/12 Notice of Investigative Interview) at 1.

[36] Docket 51-13 (Req. for Admis. No. 8) at 1.

[37] Docket 52 (Ex. 1, 4/10/2012 Email from Anne Knight) at 1.

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 7 of 36

next day."[38]  Ms. Rush tendered her resignation later that same day.[39]

On April 27, 2012, Ms. Rush filed with ASCHR and cross-filed with the EEOC a charge alleging age and race discrimination in connection with the recent incidents in March and April 2012, and retaliation based on Ms. Rush's filing of the discrimination charges in 2009 and 2011 ("the 2012 Charge").[40]  In her filing, Ms. Rush explained the credit card incident and said that DHSS had "established that [Ms. Rush's] coworker had actually made the call to its client and falsely gave [Ms. Rush's] name."[41]  The ASCHR investigated the 2012 Charge, and on June 1, 2016, dismissed the case after finding that Ms. Rush's "allegations [were] not supported by substantial evidence."[42]  On June 30, 2016, Ms. Rush appealed ASCHR's determination to the Alaska Superior Court.[43]  On September 22, 2016, the Alaska Superior Court granted ASCHR's motion to remand the matter back to the commission for further investigation.[44]  On October 5, 2016, before ASCHR had

---

[38] Docket 51 at 18; *see* Docket 53 at 1, ¶ 2; Docket 48-21 at 16:18–17:7.  DHSS denies that Ms. Rush was compelled to resign, and instead asserts that "BCP management recommended to the Department that Ms. Rush be dismissed from her employment," but no final decision had been made before Ms. Rush voluntarily resigned.  Docket 45-2 at 6; Docket 45 at 18.

[39] Docket 45-3 (4/10/12 Letter of Resignation).

[40] Docket 45-39 (ASCHR Compl. No. J-12-125) (which states "I would also like this complaint filed with EEOC").

[41] Docket 45-39 at 1.

[42] Docket 45-37 (6/1/16 ASCHR Determination).

[43] Case No. 3AN-16-07449CI; Docket 16 at 17, ¶ 147.

[44] Case No. 3AN-16-07449CI; Docket 16 at 17, ¶ 147; Docket 51-13 (Req. for Admis. No. 7) at

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 8 of 36

made any determination on remand regarding the 2012 Charge, Ms. Rush filed the instant federal action alleging race discrimination.[45] On December 30, 2016, ASCHR issued a second determination on the 2012 Charge; it concluded that Ms. Rush's "allegations [were] not supported by substantial evidence" and closed the case.[46] Ms. Rush did not appeal from that determination; but rather elected to move forward with this federal action instead.[47]

## II.    JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as Ms. Rush's remaining claims arise under Title VII of the Civil Rights Act of 1964.[48]

## III.    MOTION TO SUPPLEMENT THE RECORD

Ms. Rush's motion to supplement seeks leave of the Court to add five documents to the record for purposes of the Motion for Summary Judgment.[49] These documents include: (1) the October 14, 2011 Letter of Instruction from Tracey Marshall to Ms. Rush;[50] (2) the April 27, 2012 ASCHR Complaint No. J-12-

---

1.

[45] Docket 1.

[46] Docket 45-38 at 4–5.  The notice authorized Ms. Rush to seek judicial review from the Alaska Superior Court within 30 days.  Docket 45-38 at 1.

[47] Docket 51 at 2.

[48] 42 U.S.C. § 2000e *et seq.*

[49] Docket 62 (Mot. to Supp.) at 1.

[50] Docket 62-3 (Ex. 23).

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 9 of 36

125;[51] (3) two lists of DHSS employees including their names, job class description, ethnicity, and sex, dated March 30, 2012 and October 1, 2009;[52] (4) April 5, 2012 emails between Anne Knight and Tracey Marshall regarding whether there is a Letter of Instruction in Ms. Rush's personnel file;[53] and (5) Ms. Rush's response to DHSS's Interrogatory No. 15, which is a 28-page chart she prepared to summarize discriminatory events that she alleges occurred between April 2009 and April 2012.[54]

Ms. Rush asserts that she did not attach these materials to her opposition to the summary judgment motion because she did not know she needed to resubmit the documents that she had previously attached to her Motion to Compel and Reply to Opposition to Motion to Compel,[55] and because she did not know which arguments DHSS was going to make.[56] In opposition, DHSS asserts that

---

[51] Docket 62-5 (Ex. 25).

[52] Docket 62-2 (Ex. 22).

[53] Docket 62-4 (Ex. 24).

[54] Docket 62-1 (Ex. 21).

[55] Ms. Rush attached the October 14, 2011 Letter of Instruction (Docket 62-3) to her Reply to Opposition to Motion to Compel. Docket 65 at 1–2 (Reply to Mot. to Supp.); *see* Docket 42 (Reply to Opp'n to Mot. to Compel); Docket 41-11 (Ex. 22). Ms. Rush attached the October 1, 2009 and March 30, 2012 employee lists (Docket 62-2) to her Motion to Compel. *See* Docket 37 (Mot. to Compel); Docket 37-3 at 29-30 (Exs. 9 and 10). Ms. Rush attached the April 5, 2012 emails between Anne Knight and Tracey Marshall (Docket 62-4) to her Reply to Opposition to Motion to Compel. *See* Docket 42 (Reply to Opp'n. to Mot. to Compel); Docket 42-6 (Ex. 17) at 1–2.

[56] Docket 65 at 1–2, 4. Ms. Rush also contends that she submitted these documents "based on the invitation of the Court during oral argument [for the Motion for Summary Judgment]." Docket 65 at 1. However, at that hearing, the Court explained that if Ms. Rush wanted the Court to

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 10 of 36

Ms. Rush cannot satisfy the requirements of the former local rule then applicable because "this material was available to Ms. Rush at the time she submitted her Opposition"; and because she "knew or should have known that all of this material may be pertinent at the time she submitted her Opposition."[57]

## A. Legal Standard

A district court has broad discretion in "supervising the pretrial phase of litigation."[58] Under Local Civil Rule 7.1(h)(2)(B),[59] supplemental factual materials "may be filed only by leave of court" and "will not be routinely granted." [60] A court will consider "whether the material was available to the party when briefs were due" and "whether the pertinence of the material was established at the times for

---

[57] consider additional evidence that was not already in the record, then she could file a motion to supplement and "explain why [she is] doing so at this time and didn't do so when [she] filed [her] opposition." Docket 74 (Hr'g Transcript) at 3:20–21.

[57] Docket 63 (Opp'n to Mot. to Supp.) at 2. DHSS cites to Local Civil Rule 7.1(i)(2)(B); the applicable rule at the time of the filing of the motion was Local Civil Rule 7.1(h)(2)(B).

[58] *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1065 (9th Cir. 2017) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992)).

[59] The Local Civil Rules were revised effective December 7, 2018, after Ms. Rush filed her motion to supplement. The Court will apply the former rule that was in effect when Ms. Rush filed her motion. The current relevant Local Civil Rule is 7.1(d), which states in relevant part, "after briefing of a motion is complete, supplementation of factual materials may occur only by motion for good cause. The motion must . . . address the reasons earlier filing was not possible or their relevance was not appreciated. Such motions will not routinely be granted." Local Civil Rule 7.1(d)(2) (D. Alaska) (2018). The revisions to the Local Civil Rules did not materially alter the relevant rule; the Court would also reach the same conclusion if relying on the revised version of the rule.

[60] Local Civil Rule 7.1(h)(2)(B) (D. Alaska) (2008).

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 11 of 36

briefing."[61]  The Ninth Circuit affirmed a district court's denial of leave to supplement the record when the moving party did so on the "eve of oral argument in the district court," where there was "no discernible reason" why the moving party waited until the "eleventh-hour."[62]  In the instant case, Ms. Rush's motion to supplement was filed 12 days after oral argument on the summary judgment motion.[63]

### B.    Analysis

Two of the documents attached to Ms. Rush's motion to supplement, labeled one and two above, have already been entered into the record by DHSS; one was attached to its Motion for Summary Judgment as Exhibit U,[64] and one was attached to its reply as Exhibit D.[65]  Thus, the motion to supplement will be denied as moot as to these documents as they are already part of the record.  Similarly, with respect to the documents labeled three and four above,[66] Ms. Rush attached these

---

[61] *Id.*

[62] *E.E.O.C. v. Peabody W. Coal Co.*, 773 F.3d 977, 989–90 (9th Cir. 2014).

[63] On November 2, 2018, the Court heard oral argument for the summary judgment motion and on November 14, 2018, Ms. Rush filed the motion to supplement.  *See* Docket 58 (Minute Entry); Docket 62.

[64] Docket 62-5 (Ex. 25) is the same as the first page of Docket 45-39 (Ex. U).

[65] Docket 62-3 (Ex. 23) contains the same information as Docket 55-4 (Ex. D). These documents are not identical, because Exhibit 23 at Docket 62-3 does not have Tracey Marshall's signature on it, but they contain the same information except for this difference.

[66] *See supra* p. 9–10.

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 12 of 36

two documents to the reply to her motion to compel.[67]  Because these materials are already part of the record, the Court may consider them; the Motion to Supplement the Record is unnecessary as to those two documents and will be denied on that basis.[68]

With respect to the document labeled number five above, Ms. Rush asserts that the 28-page chart is intended "to save the court time in [Ms. Rush's] response. The chart is a detailed chart of the acts listed in my First Amended Complaint."[69] Thus, because the information is a restatement of the information already contained in the FAC, the Court need not consider this summary separately but instead refers to the FAC.[70]  Therefore, the motion to supplement will be denied as to this document.

For the foregoing reasons, the Motion to Supplement the Record will be denied.

### IV.    MOTION FOR SUMMARY JUDGMENT

DHSS seeks summary judgment on all remaining claims in the FAC.[71]

---

[67] Docket 62-2 (Ex. 22) at 1 is the same as Docket 42-2 (Ex. 13) at 2; and Docket 62-4 (Ex. 24) is the same as Docket 42-6 (Ex. 17) at 1–2.

[68] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it *may* consider other materials in the record.") (emphasis added).

[69] Docket 65 at 2.

[70] *See* Fed. R. Civ. P. 56(c)(3).

[71] Docket 45 at 23–39.

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 13 of 36

DHSS asserts that Ms. Rush has failed to plausibly allege facts sufficient to support a *prima facie* case for disparate treatment, disparate impact, or retaliation.[72] Ms. Rush asserts that DHSS is not entitled to summary judgment because there are material facts in dispute.[73]

## A. Legal Standard

Federal Rule of Civil Procedure 56(a) directs a district court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of showing the absence of a genuine dispute of material fact lies with the moving party.[74] "For purposes of summary judgment, [the court] must accept the nonmoving party's evidence as true" and "inferences must be drawn in the light most favorable to the nonmoving party."[75] "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"[76]

As a general matter, a court must liberally construe the pleadings of self-

---

[72] Docket 45 at 23–38.

[73] Docket 51 at 4.

[74] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[75] *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1277 (9th Cir. 2017) (citing *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987)).

[76] *Tolan v. Cotton,* 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)).

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 14 of 36

represented litigants. And yet at the summary judgment stage, the Ninth Circuit distinguishes between self-represented parties that are prisoners and those that are not.[77] "[A]n ordinary *pro se* litigant, like other litigants, must comply strictly with the summary judgment rules."[78]

DHSS urges the Court to disregard Ms. Rush's affidavit, asserting it is self-serving and uncorroborated.[79] However,

> "[t]hat the evidence is self-serving, of course, does not render it improper. '[D]eclarations are often self-serving, and this is properly so because the party submitting it would use the declaration to support his or her position. Although the source of the evidence may have some bearing on its credibility and on the weight it may be given by a trier of fact, the district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature.'"[80]

Therefore, the Court has carefully considered Ms. Rush's sworn testimony along with all the other evidence filed by the parties.

---

[77] *See Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010); *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999).

[78] *Ponder*, 611 F.3d at 1150 (citing *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007)). In contrast, prisoner *pro se* litigants are expressly exempt from these rules, and in those cases, the summary judgment standard is liberally construed. *Id.* (citing *Jacobsen v. Filler*, 790 F.2d 1362, 1365 n.4 (9th Cir. 1986)).

[79] Docket 55 (Reply to Opp'n to MSJ) at 5–7.

[80] *Anderson v. City & Cnty. of San Francisco*, 169 F. Supp. 3d 995, 1024 (N.D. Cal. 2016) (alteration in original) (quoting *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015)).

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 15 of 36

**B.    Discussion**

1.    <u>Allegations From the 2009 and 2011 Charges</u>

Title VII requires a plaintiff seeking to pursue employment discrimination in federal court to first exhaust her administrative remedies by filing a timely charge of discrimination with the EEOC or with a corresponding state agency.[81]    Failure to timely exhaust administrative remedies will ordinarily preclude a plaintiff from maintaining those claims in federal court.[82]

Title VII requires a litigant to file a charge with the state agency within 300 days after an allegedly adverse employment action has occurred.[83]    Because plaintiffs ordinarily draft the agency allegations without the aid of an attorney and are "unschooled in the technicalities of formal pleading," a court is "required to construe [a plaintiff's] EEOC charges with utmost liberality."[84]    After the EEOC completes its investigation and issues a right to sue notice, an employee has 90

---

[81] 42 U.S.C. § 2000e-5(e).

[82] *See Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1202 (9th Cir. 2016) (citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393–94 (1982)).

[83] Alternatively, an employee bringing a charge to the EEOC, must do so within 180 days. 42 U.S.C. § 2000e-5(e)(1).  An employee filing with the ASCHR may also elect to simultaneously cross-file the charge with the EEOC, as Ms. Rush elected to do. Dockets 45-5 at 1, 45-30 at 1, 45-39 at 1.

[84] *Brown v. Dep't of Pub. Safety,* 446 Fed. App'x 70, 73 (9th Cir. 2011) (quoting *Lyons v. England,* 307 F.3d 1092, 1104 (9th Cir. 2002)).

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 16 of 36

days from receiving the notice in which to initiate a federal action, on the allegations encompassed within the agency charge.[85]

Here, on April 13, 2011, the EEOC issued a right to sue notice regarding the 2009 Charge.[86] In light of the foregoing, Ms. Rush's right to bring a federal lawsuit regarding the allegedly discriminatory acts contained in her 2009 Charge, including a hostile work environment during that time frame, expired on or about July 12, 2011.[87] Similarly, on January 17, 2012, the EEOC issued a right to sue notice regarding the 2011 Charge.[88] Ms. Rush's right to bring a federal lawsuit regarding allegedly discriminatory acts contained in the 2011 Charge expired on or about April 16, 2012.[89] Ms. Rush could have timely filed a federal lawsuit regarding the

---

[85] 42 U.S.C. § 2000e-5(f)(1); s*ee Scott v. Gino Morena Enters., LLC*, 888 F.3d 1101, 1104 (9th Cir. 2018) (holding that 90-day statute of limitations is triggered by EEOC giving right to sue notice, not when plaintiff becomes eligible for right to sue notice). ASCHR had not yet concluded its second investigation of Ms. Rush's 2012 Charge on October 5, 2016, when Ms. Rush initiated this federal action. However, Ms. Rush asserts that by December 30, 2016, when the ASCHR issued its second determination of the 2012 Charge, "[she] had already received [her] right to sue letter from the EEOC and filed in [f]ederal [c]ourt." Docket 51 at 2. DHSS does not contest the timeliness of Ms. Rush's federal complaint or argue that it is barred by Title VII's statute of limitations.

[86] Docket 45-41 at 5.

[87] 90 days after April 13, 2011 is July 12, 2011.

[88] Docket 45-41 at 7.

[89] 90 days after January 17, 2012 is April 16, 2012. *See Scott v. Gino Morena Enters., LLC*, 888 F.3d 1101, 1108 n.6 (9th Cir. 2018) ("Although the statute refers to the 90–day clock running from the 'giving' of the right-to-sue notice, the corresponding regulation requires the right-to-sue notice to state that the aggrieved person is authorized to bring suit 'within 90 days from *receipt* of such authorization.' We express no opinion on any potential discrepancy between the statute and the regulation.") (emphasis in original) (citation omitted) (quoting 29 C.F.R. § 1601.28(e)(1)).

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 17 of 36

allegations contained in both the 2009 and 2011 Charges but did not do so. The 90-day time frame for pursuing those allegations in federal court expired long before Ms. Rush initiated this action on October 5, 2016.

2. <u>Hostile Work Environment Claim</u>

Ms. Rush maintains that under the continuing violations doctrine she may now raise allegations regarding her earlier allegations.[90] That doctrine applies to hostile work environment claims. However, in *National Railroad Passenger Corp. v. Morgan*, the Supreme Court held that, "[h]ostile work environment claims are different in kind from discrete acts."[91] "Discrete acts" include allegations "such as termination, failure to promote, denial of transfer, or refusal to hire," among others.[92] Discrete acts must occur within the statute of limitations period or else they are time barred, and thus not actionable; acts that occurred prior to the statute of limitations period may be considered only as background evidence.[93] In contrast, claims of workplace harassment in the form of a hostile work environment "are based on the cumulative effect of individual acts."[94] Hostile work environment claims are not time barred "so long as all acts which constitute the claim are part

---

[90] Docket 51 at 29–30.

[91] 536 U.S. 101, 115 (2002); *see also id.* at 122; *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 870 (9th Cir. 2014).

[92] *Morgan*, 536 U.S. at 114.

[93] *Id. at* 113.

[94] *Id. at* 115.

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 18 of 36

of the same unlawful employment practice and at least one act falls within the [statute of limitations] time period."[95]

Ms. Rush asserts that her FAC contains a hostile work environment claim and the continuing violations doctrine applies to permit her to seek compensation for allegedly discriminatory conduct that began as early as April 2009 as part of a single unlawful employment practice.[96] DHSS responds that the 2012 Charge and the FAC clearly identify claims for disparate treatment, disparate impact, and retaliation that arose from discrete acts in 2012, but not a claim for a long standing hostile work environment. Therefore, DHSS maintains that the continuing violation doctrine does not apply and allegedly discriminatory acts prior to Title VII's 300-day filing period are not actionable.[97]

Ms. Rush's 2012 Charge clearly identifies two discrete acts of discrimination:

3.      On March 31, 2012, respondent's client filed a complaint regarding a phone conversation she had with me over a credit card issue. Respondent established that my coworker had actually made the call to its client and falsely gave my name.

4.      On April 10, 2012, despite this knowledge, respondent accused me of poor work performance and forced me to resign my position.[98]

---

[95] *Id. at* 122.

[96] Docket 51 at 29–30; Docket 5 at 2–20, ¶¶ 4–155.

[97] Docket 45 at 24–26; Docket 55 at 3–5.

[98] Docket 45-39 at 1.

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 19 of 36

The 2012 Charge does not mention any prior acts that could be considered workplace harassment, neither generally nor specifically. The only mention of any acts prior to 2012 are Ms. Rush's charges of discrimination in 2009 and 2011. In this regard, the 2012 Charge states, "I believe [DHSS] discriminated against me because of my age, race, and in retaliation for filing earlier discrimination complaints."[99] Liberally construed, Ms. Rush's 2012 Charge alleges a claim for retaliation, but not a hostile work environment claim. After the 2012 Charge was filed, neither the ASCHR nor the EEOC investigated a hostile work environment claim; nor did the 2012 Charge put either agency on notice of the need to conduct any such investigation.

Ms. Rush asserts that she properly pled a hostile work environment claim by using the words "hostile working environment" in Paragraph 67 of her FAC.[100] However, Paragraph 67 references only the 2009 Charge; it does not negate the fact that the 2012 Charge only references two discrete acts in 2012 and not a long term hostile work environment claim.[101] Ms. Rush also asserts that she "explained to the ASCHR intake person that [she] felt this was related to [her] previous discrimination complaints from 2009 and 2011 and they [were] continuing to come

---

[99] Docket 45-39 at 1.

[100] Docket 65 at 2; Docket 5 at 11, ¶ 67 ("On December 02, 2009, I filed a Complaint with the Alaska State Commission of Human Rights for Racial Discrimination and Hostile Working Environment.").

[101] *See* Docket 5 at 11, ¶ 67; Docket 45-5 at 1; *cf.* Docket 45-39 at 1.

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 20 of 36

after [her]."[102]  But this explanation only relates to a retaliation claim, not a claim of hostile work environment.  Furthermore, Ms. Rush did not provide any supporting evidence that ASCHR had erroneously omitted a hostile work environment claim that Ms. Rush had attempted to present to that agency in the 2012 Charge.[103]

Because the 2012 Charge liberally construed, does not allege a hostile work environment claim, such a claim would only be properly before the Court if it is "like or reasonably related to the allegations contained" in the 2012 Charge.[104] However, the allegations in the 2012 Charge address only two discrete acts in 2012 that are not reasonably related to a longstanding hostile work environment claim.

Based on the foregoing, Ms. Rush did not exhaust her administrative remedies with respect to a hostile work environment claim in the 2012 Charge.[105] DHSS is entitled to summary judgment with respect to all allegations that precede

---

[102] Docket 51 at 30.

[103] *Cf. B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1101–03 (9th Cir. 2002), *as amended* (Feb. 20, 2002) (holding that plaintiff's claims were exhausted when plaintiff provided an affidavit from state agency that processed her complaint and  pre-complaint questionnaire showing that  claim of sex harassment had been properly alleged but erroneously omitted by agency).

[104] *See Id.* at 1100 (quoting *Green v. Los Angeles Cnty. Superintendent of Schs.,* 883 F.2d 1472, 1475–76 (9th Cir. 1989)).

[105] *See Ryans v. Whatley*, No. 1:11-CV-46 (MTT), 2012 WL 3260412, at *5 n.7 (M.D. Ga. Aug. 8, 2012) (holding that pro se plaintiff's use of phrase "hostile work environment" did not save her deficient pleadings, because "[w]hile the court 'is to employ less stringent standards in assessing pro se pleadings . . . than would be used to judge the final product of lawyers, this leniency does not permit the [Court] to act as counsel for a party or to otherwise rewrite deficient pleadings.'" (second and third alteration in original) (quoting *Lampkin–Asam v. Volusia Cnty. Sch. Bd.,* 261 Fed. App'x 274, 276–77 (11th Cir. 2008))).

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 21 of 36

the March 2012 credit card incident and the April 2012 investigative interview and subsequent resignation. Without a hostile work environment claim, the continuing violations doctrine does not apply. Accordingly, Ms. Rush's claims are limited to the discrete acts of alleged discrimination and retaliation that she timely raised in the 2012 Charge—the events that occurred on March 31, 2012 and April 10, 2012.

### 3. Disparate Treatment

In the FAC, Ms. Rush alleges that DHSS treated her differently from her Caucasian counterparts because Ms. Marshall "bullied and harassed" Ms. Rush "instead of correcting the problem or firing Ms. Frank." Ms. Rush maintains "the defendants made false allegations to justify the adverse employment actions against Ms. Rush. [DHSS] did not make false allegations against the Caucasian employees."[106]

A plaintiff may prove race discrimination by disparate treatment by providing either "direct or circumstantial evidence demonstrating that a discriminatory reason 'more likely than not motivated' the employer,"[107] or by relying on the *McDonnell Douglas* framework.[108] Both parties' briefs rely on the three-step *McDonnell Douglas* burden shifting framework.

---

[106] Docket 5 at 20–23, ¶ 156–60.

[107] *Reynaga v. Roseburg Forest Prod.,* 847 F.3d 678, 691 (9th Cir. 2017) (quoting *Metoyer v. Chassman,* 504 F.3d 919, 931 (9th Cir. 2007)).

[108] *Id.* ("[N]othing compels the parties to use the McDonnell Douglas framework") (citing *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004)).

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 22 of 36

### a) McDonnell Douglas Step One

In order to establish a *prima facie* case of disparate treatment, a plaintiff must show each of the following: "(1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subjected to an adverse employment action; and (4) similarly situated [non-African American individuals] were treated more favorably, or her position was filled by a [non-African American individual]."[109] At the summary judgment stage, a plaintiff need only provide "very little" evidence,[110] or "minimal [proof] and does not even need to rise to the level of a preponderance of the evidence."[111]

"Title VII treats [a forced] resignation as tantamount to an actual discharge."[112] When an employer lacks good cause to terminate an employee, but nevertheless threatens an employee with an ultimatum—forcing the employee to choose between resignation and termination—the employee may reasonably respond by choosing to resign in the face of certain termination.[113]

---

[109] *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002); *see St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (holding that *prima facie* case for race discrimination was supported by fact that terminated plaintiff's position was filled by Caucasian individual)).

[110] *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (citing *Sischo–Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1111 (9th Cir. 1991)).

[111] *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

[112] *Green v. Brennan,* 136 S. Ct. 1769, 1776–77 (2016).

[113] *Debeikes v. Hawaiian Airlines, Inc.*, 141 F. Supp. 3d 1075, 1101 (D. Haw. 2015), *aff'd*, 725 F. App'x 499 (9th Cir. 2018) (holding that when employer lacks good cause to believe there were

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 23 of 36

DHSS does not dispute the first or second prong of Ms. Rush's *prima facie* case. It acknowledges that Ms. Rush, as an African American, is a member of a protected class, and that Ms. Rush was qualified for her position.[114] It is also undisputed that Ms. Rush's CJT 1 position was filled by a Caucasian woman.[115] However, DHSS disputes that Ms. Rush was subjected to an "adverse employment action."[116] Ms. Rush responds that the March 31, 2012 credit card incident and the April 10, 2012 investigative interview and subsequent resignation were each adverse employment actions.[117]

As to the credit card incident, Ms. Rush maintains that this "was not a misunderstanding," but that Ms. Frank intentionally stole Ms. Rush's identity by identifying herself as "Salesia" to a client on the phone and seeking credit card information.[118] Moreover, Ms. Rush alleges that Ms. Frank's impersonation was the result of DHSS's plan to "set [Ms. Rush] up so they could write another disciplinary action against [her] because [she] was not allowed to ask for credit

---

grounds for termination, providing employee choice between resignation and termination could establish that resignation was involuntary).

[114] Docket 45 at 26.

[115] Docket 51-14 (DHSS Response to Interrogatory No. 5).

[116] Docket 45 at 27–28.

[117] Docket 51 at 30–31, 33–34.

[118] Docket 48-21 at 15:9–23.

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 24 of 36

card information over the phone from the clients."[119]

An adverse action "in most cases inflicts direct economic harm" and must be "more disruptive than a mere inconvenience."[120] Ms. Rush admits that although she filed a complaint with the Federal Trade Commission and the Anchorage Police Department, the complaints were not investigated, and no credit cards or bank accounts were opened in her name without her permission.[121]

The Court assumes without deciding that a reasonable jury could infer that Ms. Frank's credit card actions were part of a DHSS plan to set up a disciplinary action against Ms. Rush. However, if such a plan existed, it was unsuccessful because there is no evidence of any economic or reputational harm to Ms. Rush as a result of this incident. Although on April 2, 2012, there was a meeting and raised voices discussion regarding Ms. Rush and Ms. Frank's relationship and the credit card incident,[122] Ms. Rush was not disciplined for allegedly taking a client's credit card information. Accordingly, even taking the evidence in the light most favorable to Ms. Rush regarding this incident, there is no evidence from which a reasonable jury could infer that the credit card incident constituted an adverse

---

[119] Docket 53 at 2, ¶ 4.

[120] *Jackson v. Geithner*, No. CV F 11-0055 LJO SKO, 2011 WL 2181394, at *9 (E.D. Cal. June 3, 2011) (first quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998); and then quoting *Crady v. Liberty Nat. Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir. 1993)).

[121] Docket 48-21 at 14:7–15:8.

[122] Docket 53 at 6, ¶ 17; Docket 16 at 16, ¶ 141.

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 25 of 36

employment action.

As to the April 10, 2012 incident, the email Ms. Knight sent when she had "just returned" from the investigative interview with Ms. Rush places at issue the question of whether Ms. Rush was compelled to resign.[123] DHSS asserts that "the decision to terminate plaintiff's employment could only be made by the Commissioner of the Department of Health and Social Services . . . [and] at the time plaintiff chose to resign, no final decision regarding plaintiff's employment status had been made."[124] But Ms. Rush asserts she "was told by her union representative that Tracey Marshall said that Ms. Rush could either resign that afternoon or could come in the following morning and be terminated at the door."[125] Based on that information, Ms. Rush indicates that she submitted her reservation.

Viewing the evidence in the light most favorable to Ms. Rush, DHSS communicated to Ms. Hartlieb, who in turn communicated to Ms. Rush that she must choose between resignation and termination. Ms. Rush then submitted her letter of resignation. A resignation in those circumstances would constitute an adverse employment action for purposes of a *prima facie* case, step one in the

---

[123] *See* email cited *supra* Section I.C. ASCHR investigated but ultimately "did not resolve the dispute about whether [DHSS] compelled [Ms. Rush] to resign." Docket 45-38 at 4.

[124] Docket 16 at 16, ¶ 143. DHSS admits that "[BCU] management recommended to the Department that Ms. Rush be dismissed from her employment." Docket 45-2 at 6; *see* Docket 45 at 18.

[125] Docket 5 at 19, ¶ 143.

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 26 of 36

*McDonnell Douglas* burden shifting framework.

> b) *McDonnell Douglas* Step Two

If a plaintiff establishes a *prima facie* case, then the burden of production shifts to the employer to show that it had a legitimate business reason to support its adverse action against the plaintiff.[126]

DHSS contends that its legitimate nondiscriminatory reason for the adverse employment action on April 10, 2012 was Ms. Rush's "inappropriate workplace communication."[127] It maintains that Ms. Rush stated the following: "(1) Frank, her coworker and lead, was deceitful; (2) Frank could not tell her what to do; (3) Frank would have to learn how to adjust to the BCU; and (4) when she told Marshall, her African-American supervisor, that she didn't count as an African-American because she was like President Barack Obama and could play either the black or white card."[128] These proffered statements, if established as having been made, could constitute inappropriate workplace communication sufficient to establish a "legitimate business reason" justifying DHSS's adverse employment action. Based on the foregoing the Court finds that DHSS has met its burden of production at *McDonnell Douglas* step two.

---

[126] *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[127] Docket 45 at 30.

[128] Docket 45 at 30–31.

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 27 of 36

### c)    McDonnell Douglas Step Three

If the defendant articulates a legitimate, nondiscriminatory reason for the adverse action, then a plaintiff bears the burden to show that the employer's proffered reason is pretext for discrimination.[129]  In order to show pretext, a plaintiff can rely on either direct or circumstantial evidence.[130]  Here, there is no direct evidence of race discrimination in the record.  Therefore, Ms. Rush must provide circumstantial evidence; the law requires such evidence to be "specific" and "substantial" to create a triable issue of whether DHSS's proffered reason is pretextual.[131]  However, the Ninth Circuit has cautioned that this "standard is 'tempered' by [its] observation that a plaintiff's burden to raise a triable issue of pretext is 'hardly an onerous one.'"[132]  The cumulative evidence must show either "a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence."[133]  In judging whether the explanation is worthy of credence, "it is not important whether [the explanation

---

[129] *Villiarimo*, 281 F.3d at 1062.

[130] *Id.* (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998)).

[131] *Earl v. Nielsen Media Research, Inc.,* 658 F.3d 1108, 1113 (9th Cir. 2011) (citing *Godwin,* 150 F.3d at 1222); *but see Cornwell v. Electra Cent. Credit Union,* 439 F.3d 1018, 1029–31 (9th Cir. 2006) (questioning the continued viability of *Godwin* after *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 100 (2003)).

[132] *Earl,* 658 F.3d at 1113 (quoting *Noyes v. Kelly Servs.,* 488 F.3d 1163, 1170 (9th Cir. 2007)).

[133] *Villiarimo,* 281 F.3d at 1062 (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000)).

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 28 of 36

is] objectively false . . . [r]ather, courts 'only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless.'"[134]  At the third step, the question of pretext "now merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination."[135]

Ms. Knight's email evidences that DHSS believed that inappropriate communication was the reason for its action.  In pertinent part, the email states:

> Lisa was suspended for 10 days in 2010 and 3 day [*sic*] in March – all with issues regarding inappropriate communication in the workplace. Once again she is inappropriate towards a co-worker and her supervisor, but she only sees it as being honest. Management doesn't believe that another suspension is going to change the way Lisa communicates at all.[136]

Ms. Rush admits telling Ms. Marshall that "[Ms.] Frank is . . . going to have to learn to adjust to this office."[137]  Ms. Rush also admits that she called Ms. Frank deceitful.[138]  However, DHSS's other allegations of inappropriate communication

---

[134] *Id.* at 1063 (emphasis omitted) (quotation omitted).

[135] *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *see Costa v. Desert Palace, Inc.*, 299 F.3d 838, 855 (9th Cir. 2002), *aff'd*, 539 U.S. 90 (2003) ("The burden of *persuasion* always remains with the employee to prove the ultimate Title VII violation—unlawful discrimination.") (emphasis in original).

[136] Docket 52 (Ex. 1) at 1.

[137] Docket 48-21 at 12:20–23.

[138] Docket 51 at 36; Docket 45 at 30.

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 29 of 36

are controverted.  Ms. Rush denies saying anything about Ms. Marshall's race.[139]

Ms. Rush also denies saying that Ms. Frank, a Criminal Justice Technician II,

"could not tell her what to do."[140]

At the summary judgment stage, the Court must draw all reasonable

inferences in Ms. Rush's favor.  However, even in doing so, on this record, Ms.

Rush has not provided circumstantial evidence sufficiently "specific" and

"substantial" to show that DHSS's proffered reason is unworthy of credence.[141]

The record also does not contain any direct evidence on credibility, such as

statements by DHSS that refer indirectly to Ms. Rush's race or suggest race was

the reason for its April 2012 action.  Nor does the record contain evidence that

anyone at DHSS harbored animus towards Ms. Rush because of her race.[142]

---

[139] Docket 51 at 37; *cf.* Docket 45 at 30–31.

[140] Docket 51 at 36; *cf.* Docket 45 at 30.

[141] *Cf. Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1282–83 (9th Cir. 2017) (holding that plaintiff had demonstrated pretext for sex discrimination when she provided evidence of discrimination, including coworkers who testified that what plaintiff did was a common practice rather than a terminable offense, and that she was replaced by a male who was certainly less qualified, and arguably unqualified); *E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1051–53 (9th Cir. 2009) (finding evidence sufficient to "allow a jury to infer that Boeing's proffered reason . . . [was] unworthy of credence" where the employee received scores indicating "no background or experience" in areas where she had received higher scores in earlier evaluations, manager was unable to articulate any particular reason why her soft skill scores went down, and manager complained he could not communicate with her "dotted-line" manager but could not recall the dotted line manager's name; there was also detailed contradicting testimony from several witnesses regarding why the scores were not credible).

[142] *See Ortiz v. Georgia Pac.*, 973 F. Supp. 2d 1162, 1176 (E.D. Cal. 2013) (granting summary judgment to employer on disparate treatment claim based on plaintiff's inability to present any circumstantial evidence of discriminatory animus sufficient to establish pretext).

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 30 of 36

Ms. Rush also has not produced evidence that a discriminatory reason more likely motivated the forced resignation rather than the inappropriate workplace communications. Ms. Rush has shown that her position was filled by a Caucasian woman, which could be evidence of pretext if her replacement was less qualified than Ms. Rush.[143] However, Ms. Rush did not provide any evidence as to the replacement's qualifications. Ms. Rush points to DHSS's employment record dated April 12, 2012, regarding Ms. Rush's resignation, which states in showing the comments field, "Employee has left state."[144] Ms. Rush denies that she left the State of Alaska or that she even moved within the state.[145] But assuming the statement was inaccurate, it has nothing to do with Ms. Rush's race. It is not evidence of, nor does it provide a reasonable inference of, race discrimination. Although not dispositive, it is worth noting that the alleged acts of race discrimination against Ms. Rush were carried out by two other African Americans working in the BCU, including her African American supervisor. Furthermore, this is not a case where Ms. Rush is the only African American employee in a group of otherwise all Caucasian employees.[146] To the contrary, in 2012, 25% of BCU

---

[143] Docket 51-14 (DHSS Response to Interrogatory No. 5). *See Mayes,* 846 F.3d at 1282.

[144] Docket 45-4 (DHSS Employment Clearance Form).

[145] Docket 53 at 2, ¶ 5 ("I did not leave the State. I still live in the same place I lived when I worked for BCU.").

[146] *Cf. Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000) (finding issue of material fact of discrimination when plaintiff was only non-Caucasian full-time faculty member in his department who did not receive tenured position). In March 2012, there

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 31 of 36

employees were African Americans.[147]  In order to survive summary judgment, Ms.

Rush needed to provide some evidence from which a jury could decide that DHSS

forced Ms. Rush to resign "due in part or whole to discriminatory intent" on account

of Ms. Rush's race.[148]  Ms. Rush has not produced such evidence.  Accordingly,

the Court will grant DHSS's motion for summary judgment with respect to Ms.

Rush's disparate treatment claim.

### 4.    Retaliation

The Court focuses on Ms. Rush's retaliation claims that relate to the March

2012 credit card incident and the April 2012 forced resignation.[149]  Ms. Rush

maintains DHSS took these actions because she had made two prior formal

complaints of race discrimination, the 2009 and 2011 Charges.[150]

In order to prevail on a claim for retaliation under Title VII, a plaintiff must

provide evidence showing the following: "(1) a protected activity; (2) an adverse

employment action; and (3) a causal link between the protected activity and the

---

were three African American women and one Hispanic woman in the BCU. Docket 37-3 at 29.

[147] Docket 37-3 at 29.

[148] *Lahrichi v. Lumera Corp.*, 433 F. App'x 519, 520 (9th Cir. 2011) (affirming district court's grant of summary judgment in favor of employer and holding that plaintiff "'must produce some evidence suggesting that' [defendant's] action 'was due in part or whole to discriminatory intent'") (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004)).

[149] The Court only addresses allegedly retaliatory conduct that would be timely.  *See supra* IV.B.1.

[150] Docket 5 at 23–24, ¶¶ 164–68.

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 32 of 36

adverse employment action."[151]   "Title VII retaliation claims must be proved

according to traditional principles of but-for causation, not the lessened causation

test stated in [42 U.S.C.] § 2000e–2(m)."[152]

The parties agree that Ms. Rush engaged in protected activity by filing the

2009 and 2011 Charges.[153]  However, Ms. Rush's retaliation claim cannot proceed

because she has not provided any evidence that these charges were the "but for"

cause of her forced resignation or any other adverse action.   The charge of

discrimination closest to Ms. Rush's April 2012 resignation had been made over

one year earlier—in March 2011.   This gap in time between the protected activity

and the adverse action is insufficient to create an inference of causation in a

retaliation claim.[154]  Without that inference, Ms. Rush must provide other evidence

to establish that the 2009 and 2011 Charges were the cause of her forced

---

[151] *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034–35 (9th Cir. 2006).

[152] *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

[153] Docket 55 at 19–20; Docket 51 at 40.

[154] *See Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001) (per curiam) (noting that a court may not infer causation from temporal proximity unless time between  employer's knowledge of protected activity and adverse employment action is "very close" and citing cases for proposition that  three-month and four-month time lapses insufficient to infer causation); *Cornwell*, 439 F.3d at 1036 (holding that "district court did not err in concluding that too much time had passed between Cornwell's complaints and his eventual termination" where the time period was seven months); *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (holding thirteen months between adverse action and protected activity insufficient to create inference of causation); *Manatt v. Bank of Am., NA*, 339 F.3d 792, 802 (9th Cir. 2003) (holding that nine months between adverse actions and protected activity insufficient to establish causal link); *cf. Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004) (holding that seven weeks sufficient to support inference of causation).

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 33 of 36

resignation, but she has not done so.  Accordingly, the Court will grant DHSS's

motion for summary judgment with respect to Ms. Rush's retaliation claim.

### 5.   Disparate Impact

Ms. Rush alleges that DHSS employed a "practice of hiring and promotion

based on 'who you know' [that] provided [an] unfair advantage to Caucasian

employee[s in] supervisory positions."[155]  DHSS asserts that Ms. Rush's claim of

disparate impact fails because the "complaint identifies no employment policy or

practice that results in a disparate impact."[156]  DHSS contends that the hiring and

promotion practice Ms. Rush identifies "is nothing more than 'point[ing] to a general

employment policy,' rather than isolating and identifying a specific practice."[157]

Indeed, DHSS and Ms. Rush agree that on the current record "there is no evidence

of policies causing disparate impact[]."[158]

In order to succeed on a claim for disparate impact, a plaintiff must "(1) show

a significant disparate impact on a protected class or group; (2) identify the specific

employment practices or selection criteria at issue; and (3) show a causal

---

[155] Docket 5 at 23, ¶ 163.

[156] Docket 45 at 33.

[157] Docket 45 at 33–34 (alteration in original) (quoting *Meacham v. Knolls Atomic Power Lab.,* 554 U.S. 84, 100 (2008)).

[158] Docket 51 at 39; *see* Docket 45 at 33–34.  Ms. Rush asserts that DHSS is delinquent in producing the policies that she believes will support her claim and seeks leave of the Court to "delay . . . determining this issue until the defense produces the policies [she] ha[s] requested." Docket 51 at 40. To the extent Ms. Rush is seeking leave of the Court to reopen discovery with respect to DHSS's policies, the Court declines to do so. *See* Docket 69 (Order Denying Motion to Reopen Discovery).

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 34 of 36

relationship between the challenged practices or criteria and the disparate impact."[159]  "Statistical evidence is used to demonstrate how a particular employment practice causes a protected minority group to be under represented in a specific area of employment."[160]  "It is not sufficient to present evidence raising an inference of discrimination on a disparate impact claim.  The plaintiff 'must actually prove the discriminatory impact at issue.'"[161]

The Court agrees with the parties; Ms. Rush has not identified a specific employment practice or policy on which to base her disparate impact claim. Furthermore, even if such a policy existed, Ms. Rush has not provided statistical or other evidence that African Americans were negatively impacted by any such policy.  Thus, Ms. Rush has not provided sufficient evidence from which a jury could infer that there was a disparate impact on African Americans.  Therefore, the Court will grant DHSS's motion for summary judgment on that claim.

## V.  CONCLUSION

For the foregoing reasons, IT IS ORDERED that Plaintiff's Motion to Supplement the Record at Docket 62 is DENIED.

---

[159] *Adam v. Kempthorne*, 292 F. App'x 646, 651–52 (9th Cir. 2008) (quoting *Hemmings v. Tidyman's Inc.,* 285 F.3d 1174, 1190 (9th Cir. 2002)).

[160] *Paige v. California*, 291 F.3d 1141, 1145 (9th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (July 18, 2002).

[161] *Stout v. Potter*, 276 F.3d 1118, 1122 (9th Cir. 2002) (quoting *Rose v. Wells Fargo & Co.,* 902 F.2d 1417, 1421 (9th Cir. 1990).

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 35 of 36

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment at Docket 45 is GRANTED.

The Clerk of the Court is directed to enter a final judgment consistent with this order.

DATED this 3rd day of June, 2019, at Anchorage, Alaska.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

Case No. 3:16-cv-00233-SLG, *Rush v. State of Alaska, Dep't of Health & Social Services*
Order re Motion for Summary Judgment
Page 36 of 36